Thank you. Good morning, Your Honors, and may it please the Court. We are here on appeal from the Board of Immigration Appeals, which denied Petitioner's motion to terminate and Petitioner's motion to remand and dismissed Petitioner's appeal. The questions of law at issue are reviewable de novo. The asylum, withholding, and convention against torture decisions are reviewed for abuse of discretion. The main reason Petitioner is here today is because the BIA should have ordered the Petitioner's remanded to the immigration judge for further consideration. First, because the Oregon menacing statute is not a categorical match to the generic crime of a crime involving moral turpitude. And secondly, because the Petitioner is not subject to the stop time rule for purposes of cancellation of removal based on prayer of these sessions. Therefore, Petitioner requests a remand for further consideration of his cancellation of removal application. The categorical approach is an analytic framework used to compare a specific conviction with a generic definition of a crime. The court must consider the elements of the specific crime and whether these sufficiently match the elements of the generic crime. Here, the definition of Oregon menacing is if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury, they've committed Oregon menacing. Whereas the definition of the generic crime, the crime involving moral turpitude, is first an act accompanied by second a vicious motive or a corrupt mind. The BIA erred in finding the categorical match because Oregon menacing can cover attempts. The definition is intentionally attempts. Attempts does not require an inherently reprehensible act. And further, no morality difference in attempt requires a substantial step. So, the attempt, the attempt with a substantial step is maybe an act, but it's still the the statute still says attempt and covers attempt and an act is required under the general definition. Further, no morality is attached to the intent needed for the conviction of menacing. The second element of the crime involving moral turpitude is a vicious motive or a corrupt mind. Here, the definition just says intentionally attempts. It does not talk about the morality, the vicious motive, or the corrupt mind. And the government cites to State v. Anderson that the statute distinguishes between socially acceptable and unacceptable behavior, but that doesn't reach vicious and corrupt. Unacceptable is not the same as vicious and corrupt. The government also incorrectly cites State v. Lockwood. It's actually a dicta from State v. Garcia's, but that is not controlling to show that the vicious motive is required for a conviction under the Oregon menacing statute. Next, another consideration is the least culpable conduct that can lead to a conviction under the statute does not fit the definition of a crime involving moral turpitude. Petitioner cites to the Dompoline case in the Oregon Court of Appeals. Here, the minimum conduct that was prosecuted under Oregon menacing recognized by the appeals court to be Oregon menacing involves an angry, unarmed teenager telling her mother that she thought about stabbing her in her sleep hours later for taking her phone away. This poses neither the imminence of serious physical injury nor the reprehensible conduct contrary to the accepted rules of morality. And this is Oregon menacing. So the least culpable conduct is not a crime involving moral turpitude, so Oregon menacing should not be Next, simple assault is recognized not to be a crime involving moral turpitude. In Oregon, first, second, and third degree assaults are considered felonies, while fourth degree assault is the only assault in Oregon that is considered a Class A misdemeanor, the same category as menacing in Oregon. Then finally, in Oregon, all degrees of assault require an element of injury, and first and second degree assault require serious physical injury. There is no injury requirement in Oregon to be guilty of menacing. So because the Oregon menacing statute is overbroad and not divisible, but is instead comprised of a single set of elements, the categorical analysis ends and cannot continue. Some additional background on menacing, the origins of menacing in Oregon are a tort law, not in criminal law. They were later codified into criminal law. And the max penalty, maximum penalty for Oregon menacing today, not necessarily at the time that a petitioner was convicted, but the max penalty today is 364 days in jail, which under immigration law can be categorized as a petty offense. So how is it that a crime involving moral turpitude is also a petty offense that doesn't fit together? The petitioner also asks that the court find that he established an exception to the one-year filing requirement for asylum, that he fears persecution as a visibly Americanized Mexican, and to overturn the Board of Immigration Appeals and the immigration judge's denials of his asylum, withholding, and convention against torture applications. Because the Oregon menacing statute is not a categorical match to the generic crime of the crime involving moral turpitude, and because the petitioner is not subject to the stop time rule for purposes of cancellation of removal based on prior v sessions, petitioner requests a remand for further consideration of his cancellation of removal application. Okay, why don't we hear from the government and then you can take your time for rebuttal. Thank you, your honors. Good morning, your honors. May it please the court, Arthur Rabin on behalf of the government, the attorney general. First, I'd like the petitioner's counsel, I'd like to turn to what is probably the main issue in this case, and that's whether the menacing offense under Oregon revised statute 163.190 constitutes a CIMT, a crime involving moral turpitude,  which is cancellation removal. Now, this court has already considered this question, albeit in a published decision, but still, Barboa Rocha concluded that the Oregon menacing statute does categorically constitute a CIMT. The board has also written on the subject in a published decision, and has reasonably determined that the offense of menacing does meet the generic definition of a CIMT. It does have a vicious motive, it does contain reprehensible conduct, and it did so by examining that the fact that this is an intentional crime, not a general offense, mens rea, and that the reprehensible conduct here involves not just the somehow being able to be classified as either a simple assault or anything like that, but instead, because the definition of this offense under the Oregon statute involves words or conduct, the person intentionally attempts to place on the person in fear of imminent serious physical injury, that is defined by the Oregon statute as a substantial risk of death, or which causes serious or protracted disfigurement, or protracted impairment of health, or impairment of the function of any bodily organ. Does the statute require an intent to injure? It requires only the words or conduct they intentionally place the person in a reasonable fear. So it does not require an intent to injure? Not, only to place the person in fear of imminent serious physical injury. Does the statute require the state to prove that the victim perceived the threat? No, your honor. It does not focus on the effect on the victim, but on the intent of the perpetrator, meaning that the... Tell me again what the reprehensible conduct is. The reprehensible conduct... It sounds like you're just collapsing the reprehensible conduct with the intention, with the wrongful intent. Well, it's not just wrongful intent, your honor. It's... Okay, so the wrongful intent is to cause the fear, whereas the reprehensible act is actually causing the effect. The effect is the seriousness of the imminence of the threat and harm from a reasonable person's standard. The victim doesn't have to perceive the effect, correct? No, but it's from a reasonable person's standard, which means that if subjectively one person may not be affected, another one could have been, the intent of the perpetrator is to cause such an effect that a reasonable person would have been in fear of serious bodily injury or death. So the board kind of suggested or hinted that that its decision, was it J.R.? What's the name of the case? J.R.? It's J.G.P., your honor. J.G.P., which is a published presidential decision by the board, may be in tension with our three-judge panel opinion in Fernanda Ruiz. Ruiz, yes, your honor. Yes, is that right? It did. There is tension between Fernanda Ruiz and the board's decision. Well, but the board dealt with it, your honor. The board addressed it and said that, you know, in Fernanda Ruiz, there was no element of seriousness of their offense, whereas in the Oregon statute, the element of seriousness of the physical harm is included. Thus, and also, the board also, you know, said that, you know, maybe that Fernanda Ruiz should have been revisited based on Barboa Rocha, given that subsequent to Fernanda Ruiz, Barboa Rocha dealt with this issue and specifically said, no, this is a CIMT based on the level of harm that could be caused, the seriousness, which Fernanda Ruiz did not deal with. So the board, so in the board's, in the board's view, just because a statute requires serious physical, a threat of serious physical injury, that's a sufficient distinction? Well, that's what it said in the decision. It's a fear of imminent serious physical injury is to differentiate between merely what Fernanda Ruiz dealt with, which was the Arizona statute, that only contained the words, a reasonable apprehension of physical injury. And because, you know, in that, in that, you know, simple assault could be construed that way, you know, simple injury, there's not that level of harm that's contained in the Oregon statute. Let me ask you this, as Mr. Gonzalez pointed out, this menacing statute has its origins in simple assault, correct? Yes, but at this point, Your Honor, this is a statutory interpretations question, which means that we're dealing with whether or not the elements of defense, as identified by the court, and as applied by the board to the interpretation of what is a CIMT, the generic definition, should deserve Chevron deference, which means that if the court does believe that the board's reasoning is reasonable, that's, we stop the evaluation there. That's, that's the, that's it. So at this point, although Petitioner raises an argument that he never raised below, meaning that he's saying, well, you know, look, this, this stems from some common law interpretation that was not considered by the board, well, you didn't give it a chance. So, we're just looking at... Let me jump ahead and take, I'll take you where I was headed, which is lateral, we have a sub-school case called, I think it's lateral... Latter-Singh. Latter-Singh, which deals with a similar situation, but it's terrorist, threat of terrorists. Right. Terrorist threat. Terroristic threats, yes, Your Honor. Right? Yes. And there, we made note of the fact that the victim actually has to perceive the threat. Correct? That's correct, Your Honor, yes. Which is, which is, which is a way in which to ground the reprehensible conduct. Isn't that right? Well, the way you're reading Latter-Singh may not be the way we're reading Latter-Singh, which is that Latter-Singh may not require, because it doesn't state that the infliction of actual fear is a requirement of that crime of terroristic threats, and thus a CIMT. It only indicates that the element may be relevant to analyzing the It's maybe a relevant element or a relevant factor to consider. So, Latter-Singh, we believe, does not control. I thought the victim in that case had to experience subjective fear. Well, Your Honor, that's what Latter-Singh found, but as we read that decision, that that's not a requirement to be a CIMT. That was just one of the factors the court considered in that case. So, and in Brubo and Rocha, the impact or the effect on the victim was not something that the court held to be significant, which, again, we are relying on. So, given the Chevron deference, given the reasonable interpretation of the board, and given that the board dealt with the court's prior cases, including Fernandez-Ruiz, Latter-Singh, in its decision, we believe that it was a reasonable expression. It should be given Chevron deference, and by implication, the court's decision, or, I'm sorry, the board's decision in the present case, which predated JGP. So, even though the board's decision in the present case does not rely on precedent of the board because it was predated JGP, nonetheless, the reasoning of both the board's decisions, they track. They're pretty much the same. So, the interpretation, because the interpretation is the same, Chevron deference should be accorded. Now, I just want to quickly move to asylum, if your honors permit. So, yes, your honor. So, the main issue here is relocation. So, Petitioner, the agency here found a number of reasons why asylum, withholding, and contract should be denied, including relocation. And relocation is something that has not been dealt in briefing by Petitioner's counsel, which means that it's waived at this point. And it's dispositive not only of asylum, but it's withholding and CAT. And also, his one-sentence arguments to withholding and CAT and his briefs also waive issues in that regard. But in any event, this asylum application was untimely. He did admit entering for the last time in 2008, but did not apply for asylum until 2012. And his excuse was, well, I didn't know who to ask and I was afraid to come into contact with an immigration official, which was obviously insufficient. He also claims that there was exceptional circumstances and changed country conditions, but his claim was not really materially affected by the intervening years, given that he claimed that back in 2008, he was victimized by a bunch of gangsters that stopped his vehicle, threatened him at gunpoint, and made him fear for his life, which is exactly what he's claiming now. So that is not a change in country conditions. Finally, with the Court's permission, I'd like to turn to the Pereira issue. Karen Geethy forecloses this Court's decision. Karen Geethy forecloses Petitioner's claim that Pereira somehow terminated, because of jurisdictional issue, terminated, should have been terminated in his case. Given that Karen Geethy has been upheld by Supreme Court, cert has been denied, we believe that's good law, and the Court should find that Karen Geethy controls and forecloses Petitioner's Pereira argument. Subject to the Court's questions. I thought his Pereira argument was on the stop time rule. No, Your Honor, because the Board said that regardless of his argument in regard to the CINT, or in regard to the stop time rule, his CINT prevented him from cancellation relief. So he never actually went into whether or not Pereira affected his stop time. So because it said specifically that he, the Oregon Medicine Statute, is what prevents him from applying for the cancellation removal that he's seeking, which is why they denied him motion to remand. And that question, Your Honors, is in front of the Supreme Court at this point, so that's an issue, and that should be decided hopefully shortly. Subject to the Court's questions. Thank you, Your Honors. I appreciate your time. Okay. Thank you, Your Honor. It's Ellis. Yes, thank you, Your Honor. So, counsel is correct that Bravoa Rocha in 2018, by the Ninth Circuit and JGP in 2019, decided that Oregon Medicine is a crime involving moral turpitude. But we are asking this Court to reverse those decisions. And the Court is able to look at these legal issues de novo. You know, we have to give deference, Chevron deference, to the published presidential decision of the Board. Can you address this? You're correct, Judge Pius, that Chevron deference is required when the reasoning is sound, is what counsel pointed out. When the reasoning is sound, but Petitioner presented earlier that both elements of the crime involving moral turpitude do not reside in the definition of Oregon Medicine. So, the reasoning is not sound. Further... Let me ask you this. Which of our cases best supports your argument that without... Since the statute doesn't require physical injury, what is the best case that supports your argument that some reprehensible act has to exist? So, the physical injury... So, in Islas Villas v. Whitaker, Judge Fletcher noted the definition of non-fraud CIMTs continue to be hopelessly and irredeemably vague, which just puts anything that's unrelated to fraud on hard-to-pin-down definitions of CIMT. So, the idea behind limiting it to only injury is kind of going back to assault again, which is why we brought up that assault in the first degree and the second degree requires serious physical injury. Assault four in Oregon also requires an injury, but assault four is considered a simple assault that is not a CIMT. Again, and that's a Class A misdemeanor. And again, Oregon menacing is also a Class A misdemeanor similarly punishable to the simple assault that is not a CIMT. So, you know, we're looking at injury as a floor to finding a CIMT here. Well, let me ask you this.  That here the statute requires an intent to inflict serious, an intent to cause fear of serious physical injury and that that level of intent or that degree of intent is sufficient to encompass the reprehensible conflict. Again, the Oregon courts said that the intent required to cause fear of this significant serious physical injury is socially unacceptable. That's as far as they went. But for a crime involving moral turpitude, you have to show an evil mind, a vicious mind. And socially unacceptable is not equivalent to evil or vicious. And another thing you pointed out, Your Honor, is that it's an intent to frighten. It's not an intent to injure. So again, this is only to frighten someone, not to actually injure them. Doesn't this case bear at least some resemblance to the Fernandez-Ruiz misdemeanor assault case out of Arizona, which was not held to be a categorical CIMT? Yes, Your Honor, I believe it's similar. And again, this Oregon menacing is most like a simple assault, which is categorically not a CIMT. And then I'll also speak to counsel's arguments on Pereira and Karen Geethy and clarify our petitioner's brief. There were two arguments made. First, that the stop time rule does apply here. The Pereira analysis of the stop time rule applies here. The notice to appear did not have the time and date on it and therefore did not trigger the stop time rule. The BIA did not rule on it because of the menacing argument. But assuming and hoping that this court finds that Oregon menacing is not a CIMT when we go back to the Board of Immigration Appeals, the stop time rule should allow us the opportunity to now file the cancellation of removal since petitioner has been in the United States 10 years since his last entrance and still does not have a correct notice to appear. So the stop time rule was never triggered. The second argument that counsel alluded to was our argument that Karen Geethy, in light of Kaiser and our deference, that Karen Geethy can be re-examined by this court. Because Karen Geethy says that with our deference, with Chevron deference, we will leave it up to the board to assume that the regulation controls in terms of the validity of the notice to appear vesting jurisdiction with the immigration court. The problem with, as acknowledged by the Supreme Court in Kaiser, is that the court is giving deference to a regulation issued by the Department of Justice. And the regulation itself redefines a notice to appear to be a document much broader than that required by statute. The statute has absolute limits on how the government can define a notice to appear, which includes the date and time of the first hearing. The regulation issued by the Department of Justice lists all the requirements of the statute except the date and time as a specific workaround to give the Department of Justice jurisdiction over the case and keep a court from overturning that finding of jurisdiction only because of the regulations. It's an end-around, a roundabout method to defy Congress. But didn't Karen Geethy conduct an independent analysis of the regulations and then basically said that what the BIA did was supportive of that rather than deferring to the agency? I'm unclear, Your Honor, on all of the facts related to Karen Geethy that you're discussing here. I am—petitioner stands for the argument that the agencies took a roundabout method to ignore the statute and create a definition of a notice to appear that vests jurisdiction in the court with a document less restrictive than the statute requires. Great. So let me just get your view on back— back on the CMIT issue on one further point. What's your argument with respect to Ladder Singh and then the subsequent case of Kopike—Kopiko? How do those two fit into this—into your analysis? So Ladder Singh says that the victim has to perceive the threat. And here—here in Oregon Medicine, again, as counsel noted and you noted, Judge, in Ladder Singh, the victim has to perceive the threat. Here, the victim doesn't have to perceive the threat. Here, it's just about the petitioner's intent. So, again, that lends to a decision that this is not— under the categorical approach, this is not a crime involving moral turpitude. And Kopike—Kopiko? And, unfortunately, Your Honor, with respect to Kopike, I—I am not aware of the facts behind Kopike. Okay. All right. I think your time is up, so thank you both very much. Thank you, Your Honor. We appreciate your arguments this morning. Thank you, Your Honor. And the matter is submitted for a decision at this time. Thank you. I should just say that our last case, LaFont, is submitted on the briefs.
judges: Paez, Watford, Tunheim